IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JUAN FRANCISCO CINTRON-ARBOLAY, et al.,

Plaintiffs,

v.

MIGUEL A. CORDERO-LOPEZ, et al.,

Defendants.

Civil No. 10-1067 (GAG)

## MEMORANDUM OPINION AND ORDER

Plaintiff Juan Francisco Cintron-Arbolay ("Cintron" or "Plaintiff") brought this action against the Puerto Rico Electrical Power Authority ("PREPA"), PREPA's Executive Director, Eng. Miguel A. Cordero-Lopez ("Cordero"), and the Regional Administrator of Technical Operations for the Ponce Region of PREPA, Edgardo Rivera-Alvarado ("Rivera") (collectively "Defendants"), seeking redress for the alleged violation of his First Amendment rights under the Constitution of the United States and Article II of the Constitution of the Commonwealth of Puerto Rico. Plaintiff claims that the defendants stripped him of his functions because of his political affiliation and retaliated against him for filing the instant suit. He brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), and also alleges supplemental causes of action under the laws of Puerto Rico.

Presently before the court is Defendants' motion to dismiss (Docket No. 17), which was timely opposed by Plaintiffs (Docket No. 18). For the reasons stated herein, the court **GRANTS in part and DENIES in part** Defendants' motion to dismiss (Docket No. 17).

**I.     Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). In so doing, the court accepts as true all well-pleaded facts and draws all

reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Iqbal 129 S. Ct. at 1950.

**II.    Discussion**

   *A.     Adverse Employment Action*

The First Amendment right to freedom of speech protects non-policymaking public employees from adverse employment decisions based on political affiliation. See Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000); see also Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Branti v. Finkel, 445 U.S. 507, 516 (1980); Elrod v. Burns, 427 U.S. 347, 354 (1976). In order to establish a claim of political discrimination, a plaintiff initially bears the burden of showing that he or she engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged employment action. Gonzalez-de-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004) (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)); Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 47 (1st Cir. 2004)). To establish a *prima facie* case, the plaintiff must show, or (for the purposes of Rule 8(a)(2)) properly plead, that (1) the plaintiff and the defendant belong to opposing

**Civil No. 10-1067 (GAG)**                                      3

political affiliations, (2) the defendant has knowledge of the plaintiff's affiliation, (3) a challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the challenged employment action. Martin-Velez v. Rey-Hernandez, 506 F.3d 32, 39 (1st Cir. 2007) (citing Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006) (quoting Gonzalez-Blasini, 377 F.3d at 85-86)).

Defendants argue in their motion to dismiss that Plaintiff's allegations fail to meet the third element of a *prima facie* case of political discrimination: that a challenged employment action occurred. In other words, that the actions allegedly taken againts Plaintiff do not constitute adverse employment actions.

Under the standard set forth in Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209 (1st Cir. 1989), the court must "determine whether the new work conditions would place substantial pressure on even one of thick skin to conform to the prevailing political view. This level of burden is reached . . . when the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." Id. at 1218. To determine whether such a reduction has occured, "the factfinder should canvass the specific ways in which the plaintiff's job has changed." Id. "[T]he factfinder's responsibility, in brief, is to determine whether the employee has retained duties, perquisites and a working environment appropriate for his or her rank and title." Id. at 1220.

Here, Plaintiff alleges that before the general elections of 2008, some of his co-workers who were affiliated with the opposing political party (the New Progressive Party, or "NPP")[1] publicly expressed that if they won the elections the plaintiff would be relegated to what they called "la cobacha" (small shack or hovel). The allegations reflect that this threat was made on several occasions and that co-defendant Rivera, then Plaintiff's co-worker, participated in teasing and harassing the plaintiff in this respect. Upon the change in administration, co-defendant Rivera was promoted to Regional Administrator of Technical Operations and, thus, became the immediate

---

[1] Plaintiff alleges in the amended complaint that he is an active member of the Popular Democratic Party ("PDP"), and that he has participated openly in "Energia Popular," a political organization of PREPA employees and polling station officers for said party. Plaintiff also alleges that he has discussed political matters extensively with co-defendant Rivera.

**Civil No. 10-1067 (GAG)**                    4

supervisor of Plaintiff. Subsequently, Rivera informed Plaintiff that "he had to tender the keys to his office, as he was going to be moved to the 'cobacha,'" referring to the same as "the facilities adjacent to the security post." (Docket No. 12, ¶ 3.14.) Plaintiff's request that he be allowed to use one of three empty and vacant offices was denied. According to the allegations in the amended complaint, "the space known as *la cobacha* had a leaking roof, no telephone lines, a rat infestation problem, exposed and dangerous electrical connections, chemicals that gave out harmful fumes (such as herbicides), broken office furniture, poor illumination and a window air conditioning unit that was not working." (Id. at ¶ 3.17.) Meanwhile, Plaintiff's former office and equipment were assigned to Mr. José Blasini, an NPP loyalist who had previously participated in the taunting remarks made against the plaintiff. Moreover, immediately after Plaintiff was transferred to his new location, his NPP co-workers, including co-defendant Rivera, allegedly "started to laugh at his misfortune and pester him with political taunts" such as, *inter alia*, "PDP rat" and "this so you learn." (Id. at ¶ 3.21.)

The court understands that these allegations are sufficient to meet the pleading requirements under Iqbal, as they reflect a change in Plaintiff's work environment that "would place substantial pressure on even one of thick skin to conform to the prevailing political view." Agosto-de-Feliciano, 889 F.2d at 1218. In making its determination, the court keeps in mind the Supreme Court's decision in Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990), issued subsequent to the First Circuit's decision in Agosto-de-Feliciano, that "promotions, transfers, and recalls after layoffs based on political affiliation" are examples of impermissible "deprivations less harsh than dismissal that nevertheless press state employees . . . to conform their beliefs and associations to some state-selected orthodoxy." Acevedo-Garcia v. Vera-Monroig, 30 F. Supp. 2d 141, 156 (D.P.R. 1998), aff'd 204 F.3d 1 (1st Cir. 2000). Although the Rutan Court did not explicitly address the issue of changed work conditions and responsibilities as examples of deprivations less harsh than dismissal, it noted in *dicta* that "the First Amendment . . . already protects state employees not only from patronage dismissals but also from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights.'" Id. at 76 n.8 (citations omitted).

Moreover, the court notes the First Circuit's affirmation that "[t]he standard for showing an adverse employment action is lower in the First Amendment retaliation context than it is in other contexts (such as Title VII)." Rivera-Jimenez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004) (citing Power v. Summers, 226 F.3d 815, 820-21 (7th Cir. 2000)). As previously stated, "[t]he Supreme Court has indicated that even relatively minor events might give rise to liability." Id. at 94 (citing Rutan, 497 U.S. at 75-76). Here, Plaintiff alleged in the amended complaint that after co-defendant Rivera was served with the complaint in this case, he summoned Plaintiff to his office for a meeting. Rivera proceeded to interrogate Plaintiff, told him that he had breached unspecified PREPA rules of conduct, that he would be taking the mater up with the Puerto Rico Labor Department, and "made it clear that if [P]laintiff voluntarily dismissed the instant case, there would be no disciplinary proceedings against him." (Docket No. 12, ¶ 3.50 - 3.56.) The court understands that these factual allegations are sufficient for Plaintiff's retaliation claim to survive the motion to dismiss stage.

Regarding Plaintiff's work reponsibilities and perquisites,[2] the complaint alleges that co-defendant Rivera "systematically began removing many of the duties that [P]laintiff was performing, including the maintenance of many substations in the Ponce Region, restricting him to those within the Ponce District, despite the fact that [P]laintiff was in charge of the whole region, which entails four technical districts." (Id. at ¶ 3.33.) This decision allegedly had an adverse effect on Plaintiff because he lost the ability to collect the *per diem* allowance that he used to receive when he had to travel to the furthest districts.

Defendants cite to Ortiz-Garcia v. Toledo-Fernandez, 405 F.3d 21 (1st. Cir. 2005), for the proposition that the loss of "perquisites like having a personal phone on the desk or having the best office ordinarily do not support an 'unreasonably inferior' work environment." (Docket No. 17 at 14.) In Ortiz, the First Circuit found, after evaluating the plaintiff's job description as well as the

---

[2] The complaint alleges that "[his] duties as Ground Maintenance Supervisor for the Region of Ponce entailed, *inter alia*, the direct supervision of [three] employees in order to ensure that all substations, technical structures and transmission centers in the Ponce District free [sic] of vegetation (which included the dispensation of herbicides) and are otherwise working properly; minor repairs to the system; and the coordination of administrative affairs such as purchase orders, compliance with security audits and the like." (Id. at ¶ 3.2.)

treatment of other employees in similar positions, that the loss of such benefits as a parking space and personal telephone did not support an inference that the plaitniff had been subjected to an "unreasonably inferior" work environment. Ortiz, 405 F.3d at 24 (citing Agosto-de-Feliciano, 889 F.2d at 1219) ("An employee who has lost merely the 'perks' of his position-for example, the best office or secretary in the agency, unlimited telephone access or unusually minimal oversight-would not meet the 'unreasonably inferior' standard.")).

Plaintiff's allegations, however, reflect more than the deprivation of mere perks related to his position. Plaintiff includes an allegation that he was removed from the maintenance of many substations which used to fall under his purview. This, combined with the previously discussed allegations regarding harassment in the workplace and inferior work conditions, counsels the court against dismissal at this stage for lack of a properly pled adverse employment action. Defendants' motion to dismiss is, therefore, **DENIED** on this ground.

### B.    *Supervisory Liability*

Under Section 1983, Plaintiffs must show that each individual defendant was involved personally in the deprivation of constitutional rights because no *respondeat superior* liability exists under Section 1983. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989)). A supervisory official may be held liable for his subordinates' behavior only if (1) his subordinates' behavior results in a constitutional violation; and (2) the official's action or inaction was affirmatively linked to that behavior such that "it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (internal quotation marks omitted) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988)). The First Circuit has stated that "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Maldonado-Denis, 23 F.3d at 582 (citations omitted). Moreover, supervisory officials will be liable only "when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, *is a proximate cause*

*of the constitutional violation.*" Guzman v. City of Cranston, 812 F.2d 24, 26 (1st Cir. 1987) (emphasis added) (citations omitted). "[T]he supervisor must demonstrate at least gross negligence amounting to deliberate indifference, and . . . his conduct must be causally linked to the subordinate's violation of plaintiff's civil rights." Guzman, 812 F.2d at 26 (quoting Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir. 1985)).

Plaintiff alleges in his amended complaint that several months after being sent to *la cobacha*, he was "relocated to an empty desk/cubicle adjacent to the blueprints section, which still did not have any of the necessary office equipment." (Docket No. 12, ¶ 3.30.) Subsequently, he sought the services of PREPA's Equal Employment Oppotunity Office ("EEOO"). Plaintiff alleges that co-defendant Rivera drafted a letter plagued with falsities, misrepresenting the facts to the EEOO. Notwithstanding, the EEOO reached an agreement with co-defendant Rivera whereby Plaintiff would be given "computer access, telephone access, a key to his office, a cessation of the demand for remodeling *la cobach*a"[3] and which indicated that "politically-charged comments be stopped." (Id. at ¶ 3.40.) Despite the wording of this agreement, the EEOO Manager, Marla del Carmen Rivera ("Ms. Rivera") sent Plaintiff a letter indicating that there had been no finding of discrimination and that she understood the measures taken were sufficient. Plaintiff requested reconsideration to Ms. Rivera, clarifying what he understood to be irregularities in the EEOO's consideration of his complaint, particularly how the Senior EEOO Officer refused to hear Plaintiff's statements concerning discrimination. Ms. Rivera finally reaffirmed her decision not to consider Plaintiff's political discrimination arguments. Plaintiff then sent a written request to co-defendant Cordero, as Executive Director of PREPA, apprasising him of the politically motivated ordeal that he was allegedly enduring at the hands of co-defendant Rivera, and requesting that Cordero take

---

[3] The amended complaint alleges that Rivera initially responded to Plaintiff's complaints about the poor conditions in *la cobacha* by suggesting that he get them fixed. Plaintiff requested the improvements in writing to the Cost Control Supervisor for PREPA, but was told that the corporation's financial situation made it impossible to authorize any remodeling. Though Plaintiff was later transfered from *la cobacha* to his current desk/cubicle, the amended complaint alleges that Rivera continued to insist that Plaintiff remodel *la cobacha* after the official denial of funds for those purposes. (See Docket No. 12, ¶¶ 3.25-3.28.)

action in his role as the nominating authority. According to the allegations in the amended complaint, Cordero "did nothing to investigate the matter and simply looked the other way . . . limiting himself to rubber stamping the [EEOO's] flawed/tailor-made decision." (Id. at ¶ 3.45.)

This is Plaintiff's sole allegation linking co-defendant Cordero to the alleged misconduct of his subordinates. Defendants argue that none of these allegations afirmatively link Cordero to any of the disriminatory decisions or actions taken by Rivera against Plaintiff. As no *respondeat superior* liability can be found under Section 1983, they argue, Plaintiff's claim against Cordero should be dismissed. Plaintiffs counter by citing to Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1 (1st Cir. 2007), for the proposition that Cordero's receipt of, and response to, Plaintiff's letter is sufficient to create supervisory liability. The court understands, however, that Plaintiff misconstrues the First Circuit's holding in that case.

In Rodriguez-Garcia, the First Circuit reversed the district court's dismissal of a Section 1983 claim based on supervisory liability against the mayor of Caguas, which the district court had argued was based on the "mere receipt of a letter." Id. at 12-13. The letter referred to by the district court was a complaint letter sent by plaintiff to Human Resources requesting a written explanation for her allegedly discriminatory transfer. After the exclusion of other evidence under Fed.R.Civ.P. 408, the district court found that the remaining evidence, " '[a] mere letter of protest and request [to Human Resources] for investigation which [was] ignored by a supervising authority,' was insufficient as a matter of law to establish that the mayor knew of [the plaintiff's] employment situation and thus he could not be found liable for any participation in her transfer and lack of reinstatement." Id. at 7.[4]

The First Circuit found that the district court had erroneously excluded the other evidence under Fed.R.Civ.P. 408. Thus, the Court stated that though it appreciated "the reluctance to permit a jury to draw an inference about the personal involvement of the mayor on the basis of a letter sent

---

[4] This determination by the lower court was based on the reasoning in Johnson v. Wright, 234 F. Supp. 2d 352 (S.D.N.Y. 2002), where the U.S. District Court for the Second Circuit explained that "[t]o allow a mere letter to an official to impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters." Id. at 363.

**Civil No. 10-1067 (GAG)**                                    9

to a department head . . . if the [lower] court had correctly admitted [the other evidence] as [proof] of the mayor's knowledge of Rodriguez-Garcia's complaint *and his personal involvement in dealing with it*, the court could no longer maintain that Rodriguez-Garcia was attempting to establish the mayor's liability based simply on his role as the supervisor of a department head." Rodriguez-Garcia, 495 F.3d at 13 (emphasis added). Thus, contrary to Plaintiff's contention, the First Circuit did not hold in that case that the mayor could be held accountable under Section 1983 solely because he received a letter from the plaintiff appraising him of the situation and, subsequently, did not act to correct it. The court in Rodriguez-Garcia held, instead, that the mayor could have been held liable on a theory of supervisory liability based *on the totality of the evidence*, most of which had been erroneously excluded. This evidence included three additional letters, two that were sent to Human Resources by Rodriguez-Garcia's attorney on her behalf, and a response letter from Human Resources discussing the challenge to her discriminatory transfer and the fact that the mayor himself had referred Rodriguez-Garcia's complaint to Human Resources. There was also testimony regarding a personal encounter between the mayor and the plaintiff, as well as a subsequent letter sent directly to the mayor.

In the present case, Plaintiff's only factual allegation regarding Cordero's involvement reflects merely a notification by Plaintiff to Cordero and the latter's cursory response. The court understands that these allegations are too tenuous to establish the level of personal involvement needed to sustain a claim of supervisory liability. Furthermore, the mere conclusory allegation that Cordero acted in "reckless disregard of plaintiff's constitutional rights" and that, subsequent to the letter exchange with Cordero, "plaintiff continues to endure unreasonably inferior work conditions, as punishment for his adherence and support of the PDP," is insufficient to establish a causal connection, especially where the complaint makes it otherwise clear that the sole basis of Plaintiff's claim is "the politically-motivated ordeal that he was enduring at the hands of Mr. Rivera." (Docket No. 12, ¶ 3.44.). Without further factual allegations tying Cordero personally to his subordinate's unconstitutional behavior, the court must **GRANT** Defendants' motion on this ground and dismiss Plaintiff's Section 1983 claim against co-defendant Cordero.

### C.  *Cordero's Liability Under Puerto Rico Law 115*

With regards to personal supervisor liability under Puerto Rico's statute prohibiting retaliation in the workplace, Puerto Rico Law No. 115 ("Law 115"), P.R. Laws Ann. tit. 29, § 194 et seq., a recent decision of this court, Otero-Merced v. Preferred Health Inc., 680 F.Supp.2d 388, 393 (D.P.R. 2010), notes that the question of individual liability under Law 115 has gone unanswered by the Puerto Rico Supreme Court. As a result, this court has reached conflicting results in its attempts to interpret the same. Compare Rivera Maldonado v. Hosp. Alejandro Otero Lopez, 614 F.Supp.2d 181, 197 (D.P.R. 2009) (finding no individual liability under Law 115, relying on findings by the Puerto Rico Court of Appeals in Vargas Santiago v. Álvarez Moore, 2006 WL 3694659 (P.R. Cir. Nov. 29, 2006)), with Hernández v. Raytheon Serv. Co. P.R., 2006 WL 1737167, at *2 (D.P.R. 2006) (concluding the opposite, relying on the liberal construction employed by the Puerto Rico Supreme Court in Rosario Toledo v. Distribuidora Kikuet, Inc., 151 D.P.R. 634 (2000), in favor of employees in discrimination cases).

However, as stated by this court in Otero-Merced, "[i]n 2003 and in 2006, the Puerto Rico Court of Appeals issued cogent, instructive decisions wherein it discussed the implications of [the Puerto Rico Supreme Court's decision in] Kikuet, comparing the language and purpose of Law 100 with that of Law 115." Id. at 393 (citing Vargas Santiago, 2006 WL 3694659 (P.R. Cir. Nov. 29, 2006), *cited with approval in* Rivera Maldonado, 614 F.Supp.2d at 197; Sánchez Barreto, 2003 WL 23336311 (P.R. Cir. Nov. 6, 2003)). "The court, in both [cases], determined that no individual liability exists under Law 115." Otero-Merced, 680 F. Supp. 2d at 393 (citing Vargas Santiago, 2006 WL 3694659 at *5; Sánchez Barreto, 2003 WL 23336311, at *4). As interpreted by the Puerto Rico Court of Appeals, this means that any action commenced under the provisions of Law No. 115 shall be filed only against the employer. See Vargas Santiago, 2006 WL 3694659 at *5. In accordance with the foregoing, to the extent that any such claims are alleged as to co-defendants Cordero and/or Rivera, the same should be **DISMISSED**.[5]

---

[5] An employee establishes a *prima facie* case under Law 115, or the Puerto Rico Whistle-blower Act, by proving that (1) he engaged in one of the protected activities set forth in the statute

### III. Conclusion

For the reasons stated herein, the court **GRANTS in part and DENIES in part** Defendants' motion to dismiss (Docket No. 17). Accordingly, Plaintiff's Section 1983 claim against co-defendant Cordero is hereby **DISMISSED**. Plaintiff's supplemental claim under Law 115 against both co-defendants Cordero and Rivera is also **DISMISSED**. Pending before the court are Plaintiff's Section 1983 claims for discrimination and retaliation against co-defendants PREPA and Rivera, as well as the remainder of his supplemental state law claims, to wit: his damages claim under Article 1802 of the Puerto Rico Civil Code against Cordero and Rivera; his claim for vicarious liability under Article 1803 of the Puerto Rico Civil Code against PREPA; and his retaliation claim under Puerto Rico Law 115 against PREPA.

**SO ORDERED**.

In San Juan, Puerto Rico this 5th day of May, 2010.

                                                            *S/ Gustavo A. Gelpí*
                                                            GUSTAVO A. GELPÍ
                                                            United States District Judge

---

and (2) that he was subsequently discharged, threatened or suffered discrimination at work. See P.R. Laws Ann. tit. 29 § 194a(a); Irizarry v. Johnson & Johnson, 2000 TSPR 15, 150 D.P.R. 155, 164, 2000 Juris P.R. 27 (2000).

The court notes that there are no factual allegations as to co-defendant Cordero linking him to the retaliatory acts allegedly commited by co-defendant Rivera. Therefore, even if the court were to follow the reasoning in Hernández, 2006 WL 1737167, at *2 (D.P.R. 2006), and determine that there can be personal supervisor liability under Law 115, it would have to dismiss Plaintiff's claim as to Cordero, regardless, for failure to state a claim under Iqbal.